

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | **CASE NO. 1:13-CR-112(1)** |
| § | |
| **STEPHEN SHANE HALL** § | |

### FINDINGS OF FACT AND REPORT AND RECOMMENDATION
### ON MOTION TO SUPPRESS

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court, Eastern District of Texas, the District Court[1] referred this matter was referred to the undersigned magistrate judge for a hearing and the submission of findings of fact and a report and recommendation on *Defendant's Motion for Suppression of Evidence* [Clerk's doc. #74].

### A. Background

Lieutenant Robert Strause is employed with the Orange County, Texas, Sheriff's Department as a lieutenant in charge of the Special Services Division. The Special Services Division includes the narcotics division of the Orange County Sheriff's Department. He has been a police officer for approximately 19 years. In March of 2013, Strause became aware that Defendant Stephen Shane Hall ("Hall"), was responsible for the distribution of a large amount of

---

[1] *See Order* referring motion [Clerk's doc. #75].

methamphetamine. Strause received this information from other officers and confidential informants. The information received by Strause indicated that the methamphetamine would be delivered to Hall's residence but would not remain at that location for very long. Strause and Detective Shaun Wilson - who is assigned to the Jefferson County Narcotics Task Force and who was assisting Strause in the investigation of Hall - agreed that officers should apply for a search warrant as soon as information was received that indicated that methamphetamine was located at the residence. Officers conducted surveillance on the house on a continuous basis and Strause himself took part in this surveillance at least twice a week from March 2013 until August 2013.

On August 31, 2013, Detective Wilson contacted Strause and told him that a confidential informant had been in Hall's residence within the past 72 hours and had seen approximately three ounces of methamphetamine there. Strause recognized the informant's name from past dealings with him in Orange County and in Jefferson County, and Strause testified that knew this informant to be credible and reliable. Strause was aware from Wilson that vehicles were continually arriving at and leaving the residence in question and that Misty Hall (Hall's wife) had been previously arrested as she left the home with narcotics.

Strause was in his vehicle typing the probable cause affidavit as Wilson, who was conducting surveillance at Hall's home, relayed information to him. Strause completed the affidavit and search warrant and printed a hard copy on a printer located at the Bridge City Police Department. He then drove to the home of Justice of the Peace Janice Menard and presented the search and arrest warrant along with a supporting affidavit to Judge Menard, seeking authorization

to search Hall's residence located at 352 Spooner, Bridge City, Orange County, Texas, 77611.[2] Judge Menard signed the warrant at 9:45 p.m. that night, August 31, 2013.[3] Once the warrant was signed, Strause met with other officers behind a local church and briefed them on the location of the premised to be searched and possible suspects who might be in the residence at the time of the search. The warrant was executed at 10:11 p.m. that same night.[4]

The evidence presented indicated the following course of events on the night of August 31, 2013. Officers entered the residence through an open garage. Hall's wife was located in the garage and detained. Officers discovered an unidentified male in the living room and apprehended another individual in a bathroom as he attempted to flush methamphetamine, LSD, and a syringe down a toilet. Hall and an individual identified as Kevin Portie were discovered in a nearby bedroom, where Hall was observed attempting to rub methamphetamine into the carpet on the floor of the bedroom. Officers discovered a .22 caliber Derringer, nine knives, a straight razor, brass knuckles, digital scales, and a pair of gloves in a backpack located in the bedroom. Also located in the backpack were various tools, a battery with a false bottom containing methamphetamine, a tablet, nine shotgun shells, narcotics paraphernalia, an amount of LSD, and a piece of mail addressed to Portie. In another bedroom agents discovered an additional amount of methamphetamine and

---

[2] The actual address of the residence is 352 Spooner, Orange, Texas 77630, not 352 Spooner, Bridge City, Texas 77611. Strause stated that he verified this after the execution of the warrant.

[3] The search and arrest warrant, supporting affidavit, and inventory were admitted into evidence by the Government as Government's Exhibit A during the suppression hearing held on March 25, 2014.

[4] Strause's offense report indicated that officers executed the search warrant at 9:11 p.m. Strause testified that this was a mistake and that the search warrant was actually executed at 10:11 p.m. Strause testified that shortly before entering the residence, officers contacted the dispatcher and advised her that they (the officers) were executing the search warrant. This call was made at 10:11 p.m. Strause stated that his probable cause affidavit and supplemental offense report also reflect that officers entered Hall's house at 10:11 p.m. *See also Defendant's Exhibit 8, submitted into the record at the suppression hearing.*

marijuana. A rifle and shotgun was located in a vehicle located inside of the garage.

A federal grand jury sitting in the Eastern District of Texas indicted Mr. Hall on November 6, 2013. *See Indictment* [Clerk's doc. #2]. Subsequently, the grand jury returned a *First Superseding Indictment* on December 4, 2013 [Clerk's doc. #42]. Count One of the First Superseding Indictment charges Hall with conspiracy to distribute and possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and "actual" methamphetamine, in violation of Title 21, United States Code, Section 846. Count Three of the First Superseding Indictment charges Hall with possession with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of possession of methamphetamine and "actual" methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1). Count Four charges Hall with possession of a firearm during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

On February 18, 2014, Hall filed his motion to suppress. In the motion, Hall argues that the evidence discovered during the search of the residence should be suppressed for the following reasons:

(1) the affidavit lacked probable cause;

(2) the warrant incorrectly identified the town of the residence to be searched. In other words, the correct address for the residence is 352 Spooner, Orange, Orange County, Texas 77630, not 352 Spooner, Bridge City, Orange County, Texas 77611 as set forth on the warrant;

(3) according to the offense reports, the officers executed the search warrant at 9:11 p.m. which was before the warrant was signed by Judge Menard at 9:45 p.m;

(4) there was no reasonable cause to believe that the items sought were located on the property to be searched;

(5) the supporting affidavit is conclusory in that it relies on hearsay statements. In

particular, Strause (the affiant) relies on hearsay statements of another detective (Wilson) relating to the reliability of a confidential informant;

(6) the facts recited in the affidavit are not sufficiently close in time to the date of the issuing of the warrant and the informant is not shown to be reliable or credible;

(7) the warrant is overbroad;

(8) improper procedures were followed during the execution of the warrant in that money seized did not appear on an inventory; drug weights were improperly recorded, items were moved during the search, and the return of the warrant is dated one month after the search; and

(9) no *Leon* good faith exception applies.

In addition, Hall argues that any oral statements provided to officers by him should be suppressed for the following reasons:

(1) they were the fruit of an illegal search and arrest;

(2) insufficient *Miranda* warnings were given prior to the interview;

(3) his statements were not freely and voluntarily given; and

(4) his statements were based on improper promises and inducements.

The Government filed its *Response to Defendant's Motion for Suppression of Evidence* [Clerk's doc. #80] on March 18, 2014. In its response, the Government contends that Strause's affidavit provided officers sufficient indicia of probable cause for them to believe that the warrant was valid. The Government further argues that the technical errors in the warrant and inventory are not fatal. Finally, the Government states that it is unaware of any statements made by Hall on the date of the execution of the search warrant.

The Court held a suppression hearing on March 25, 2014. The undersigned now issues this Report and Recommendation and findings set forth below after reviewing the search warrant affidavit in question and hearing the related testimony and arguments.

B.  **<u>Analysis</u>**

*Leon and the Good Faith Exception; Sufficiency of the Warrant and Affidavit*

When the evidence sought to be suppressed was discovered pursuant to a search warrant, "we first determine whether the good-faith exception to the exclusionary rule announced in *United States v. Leon,* 468 U.S. 897 (1984), applies." *United States v. Cherna,* 184 F.3d 403, 407 (5th Cir.), *cert. denied*, 529 U.S. 1065 (2000). The good faith exception provides that a motion to suppress should not be granted if the officer executing the warrant relied upon it in good faith. *United States v. Gibbs,* 421 F.3d 357, 358 (5th Cir. 2005). "Good faith" is determined by examining the objective reasonableness of the officer's "reliance on the issuing judge's probable cause determination and technical sufficiency of the warrant" in light of the totality of the circumstances. *Id.* at 358. While the issuance of the warrant ordinarily suffices to establish good cause, reliance on a warrant issued upon a "bare bones affidavit" is not good faith. *Id.*; *see also United States v. Payne,* 341 F.3d 393, 399-400 (5th Cir. 2003); *United States v. Craig,* 861 F.2d 818, 821 (5th Cir. 1988). A "bare bones" affidavit is defined as one that contains "wholly conclusory statements, [lacking] the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite,* 980 F.2d 317, 321 (5th Cir. 1992); *see also United States v. Pope,* 467 F.3d 912, 920 (5th Cir. 2006) ("[E]xamples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." (alterations in original)(citations omitted). Whether an affidavit is "bare bones" is determined under "the totality of the circumstances, including the veracity, reliability, and basis of knowledge of a confidential informant." *United States v. Fisher,* 22 F.3d 574, 578 (5th Cir. 1994). The issuing judge must be

allowed to draw reasonable inferences from the affidavit, and the ultimate determination of the affidavit's adequacy is entitled to great deference on review. *United States v. May,* 819 F.2d 531, 535 (5th Cir. 1987).

In his affidavit, Strause stated that he had interviewed a reliable confidential informant. Strause further advises in the affidavit that he knew the informant and that informant stated that he (the informant) had been inside Hall's home within the last 72 hours and had observed Hall in possession of methamphetamine.[5] Strause stated that he believed the informant to be reliable and credible because the informant had previously given Detective Wilson "numerous items of information" concerning the illegal trafficking of controlled substances in Orange County and Strause determined that the information was true and correct on every occasion. In addition, the informant provided Strause with information concerning Hall which proved to be correct on every occasion. Strause further stated in the affidavit that he had conducted surveillance at the residence and observed on numerous occasions individuals who would visit the home, only stay for approximately 4-5 minutes, and then depart. Strause believed, through his training and experience, that this activity was consistent with drug trafficking at the residence. Strause further stated that one such vehicle was stopped by law enforcement officers and the driver was arrested for possession of a controlled substance.[6]

Strause's affidavit clearly sets forth that a confidential informant who was deemed to be

---

[5] According to Strause's testimony, this was a misstatement in the affidavit. Strause testified that the informant had told Wilson, not Strause, that he had seen methamphetamine within the house in the last 72 hours. Wilson relayed this information to Strause.

[6] The affidavit does not set forth when this driver was arrested leaving the residence.

reliable and credible had seen methamphetamine in Hall's residence within the last 72 hours.[7] This information, taken in conjunction with the arrest of a person leaving the house and found to have narcotics in their possession and Strause's observations while on surveillance, all set forth in the affidavit, make Strause's affidavit much more than a "bare bones" affidavit. It was objectively reasonable for Strause and the other officers to rely on Judge Menard's probable cause determination and technical sufficiency of the warrant. Because this Court concludes that the good faith exception applies, the undersigned does not address Hall's argument that the warrant was not supported by probable cause. *See Cherna*, 184 F.3d at 407.

At this point, the Court finds it necessary to backtrack to some extent and address the issue concerning the false statement made in the affidavit that the informant told Strause that methamphetamine was in Hall's residence within the last 72 hours. As stated above, Strause readily admitted that this was a mistake in the affidavit and the informant had told Wilson who in turn relayed that information to Strause. The good faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If an allegation of intentional falsity or reckless disregard for the truth is "established by the defendant by a preponderance of the evidence," the Court must then excise the offensive language from the affidavit and determine whether the remaining portion would have established the necessary probable cause. *See Franks*, at 156-57; *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir.), *cert.*

---

[7] One of Hall's complaints regarding the sufficiency of the affidavit is that Strause relied on hearsay statements from Wilson regarding the reliability of the confidential informant. "[I]t is undisputed that officers may submit warrant applications containing hearsay, including, of course information provided by other officers." *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 407 (5th Cir. 1989).

*denied*, 537 U.S. 910 (2002); *United States v. Alvarez*, 127 F.3d 372, 374 (5th Cir. 1997). The initial burden is on the defendant to prove that the false information was given intentionally or recklessly. *Cavazos*, 288 F.3d at 710. Strause unequivocally testified that the statement was a mere mistake. The Court finds his testimony credible and uncontroverted. Therefore, the good faith exception is still applicable.

Hall's other complaints about the search warrant are equally unpersuasive. Hall contends that the warrant was defective because it contained the wrong address. The *Leon* court held that one exception to the good faith rule is when "a warrant may be so facially deficient - *i.e.*, in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." *Leon,* 104 S.Ct at 1321. Strause testified that he and the other officers involved all thought that Hall's residence was located within the city limits of Bridge City, Texas, not in adjacent Orange, Texas. Strause testified that he later determined that the incorporated Bridge City city limit was only approximately one street over from Hall's house. Further, Strause searched the only location intended to be searched, which was the residence where he had conducted surveillance for several months. Because Strause was both the affiant and the executing officer and had conducted surveillance on the home, "there was no possibility that the wrong premises would be searched." *See United States v. Burke*, 784 F.2d 1090, 1093 (11th Cir.), *cert. denied,* 476 U.S. 1174 (1986); *see also United States v. Gordon*, 901 F.2d 48, 50 (5th Cir. 1990). Strause testified that 352 Spooner, Bridge City, Orange County, Texas (the address on the search warrant) did not exist so there was, again, no possibility that the wrong location could have been searched. Further, there is nothing to indicate that Strause acted in bad faith. "It obviously could not serve any law enforcement, or other, purpose to intentionally state a nonexistent address

on a warrant plainly intended to be executed at the specific place it was executed and for which there was probable cause to search." *Gordon*, 901 F.2d at 50.

In his motion, Hall contends that the search is unconstitutional because, according to the offense reports, the officers executed the search warrant at 9:11 p.m. which was prior to the time that the warrant was signed by Judge Menard at 9:45 p.m. Again, Strause testified during the suppression hearing that he was on the entry team executing the search warrant and the warrant was not executed until it was signed by Judge Menard at 9:45 p.m. Strause was adamant that officers contacted the dispatcher by cellular telephone and informed dispatch that officers were entering the residence shortly before officers approached the garage. This call was made at 10:11 p.m. according to Strause. He also stated that this was the same time indicated on his probable cause affidavit. Again, this Court finds Strause's testimony credible. There was no credible evidence that officers entered the home before the search warrant was signed by Judge Menard.

Hall next argues that the search warrant was overbroad. The test for determining whether a search warrant is overbroad is whether the language will permit the executing officer to reasonably know what items are to be seized. *United States v. Beaumont*, 972 F.2d 553, 559-560 (5th Cir. 1992). The warrant must identify the place to be searched and the items to be seized. *United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995). The warrant in question signed by Judge Menard commanded the officers to enter the residence and to "search for the property described in said Affidavit and to seize the same." The affidavit states that "there is at the suspected place and premises property concealed and kept in violation of the laws of Texas and described as follows; Methamphetamine." Therefore, there is no question that the warrant specifically sets forth the item to be seized, that is, methamphetamine.

As stated above, officers seized numerous items during the search of the residence, including, but not limited to, firearms, tubing modified for smoking methamphetamine, currency, blotter paper, knives, and paperwork.[8] The Fifth Circuit has stated:

> As a general rule, only items that are described in a search warrant may be seized in accordance with Fourth Amendment concerns. An exception to this general rule, however, is found where a police officer was a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine.

*United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005), quoting *United States v. Bills*, 555 F.2d 1250, 1251 (5th Cir. 1977).

The officers were authorized to search throughout the residence in any place where methamphetamine could reasonably be found. The items listed in the inventory could be discovered anywhere in the residence where methamphetamine could be found. Therefore, these items, as well as the methamphetamine, are admissible at trial.

*Delay in Returning the Warrant*

Hall next complains that Strause returned the warrant one month after the search and contends this constituted some sort of unreasonable delay. Hall relatedly asserts that officers did not note that money was seized during the search on the inventory. Rule 41 of the Federal Rules of Criminal Procedure provides that "[t]he officer executing the warrant must promptly return it - together with a copy of the inventory - to the magistrate judge designated on the warrant." FED. R. CRIM. P. 41(f)(1)(D). However, the Fifth Circuit had held that Rule 41 "only applies to warrants issued upon the request of a federal law enforcement officer or an attorney for the government." *See United States v. McKeever*, 905 F.2d 829, 832-33 (5th Cir. 1990) (en banc). Therefore, this

---

[8] An inventory of the items seized was admitted into evidence as a part of the Government's Exhibit A.

Court must look to Texas law to determine the validity of Hall's argument.

Article 18.10 of the Texas Code of Criminal Procedure provides, in part:

> Upon returning the search warrant, the officer shall state on the back of the same, or on some paper attached to it, the manner in which it has been executed and shall likewise deliver to the magistrate a copy of the inventory of the property taken into his possession under the warrant.

TEX. CODE CRIM. PROC. art. § 18.10 (West 2013).

Article 18.10 is silent on any time limitation for when the return should be made. However, ministerial violations of the search warrant statutes will not vitiate the search warrant in the absence of a showing of prejudice. *See Roberts v. State,* 963 S.W.2d 894, 903 (Tex. App. - Texarkana 1998, no pet.); *see also State v. Manry*, 56 S.W.3d 806, 811 (Tex. App. - Texarkana 2001, no pet.) (holding that even the complete failure to file an inventory and return will not vitiate a search warrant without a showing of prejudice to the defendant). Hall has not established that he was prejudiced by Strause's delay in filing the return and inventory.

*Officer Conduct and Allegations of Improper Procedure During the Search*

Finally, Hall complains about the officer's conduct during search, asserting that the drug weights were improperly recorded and items were moved during the search. The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV. Although the Warrant Clause offers a guarantee of reasonableness, "possession of a search warrant does not give the executing officers a license to proceed in whatever manner suits their fancy." *Hummel-Jones v. Strope*, 25 F.3d 647, 650 (8th Cir. 1994). Rather, "the

manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Dalia v. United States*, 441 U.S. 238, 258 (1979). Courts determine reasonableness by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. *See Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal citation and quotations omitted).

In the present case there is simply no evidence that Strause or any of the other officers who executed the warrant did so unreasonably. Strause testified that, after observing Hall rub suspected methamphetamine into the carpet in the bedroom of the residence, he vacuumed the substance from the carpet and weighed the substance. Similarly, Strause testified during the hearing that he discovered Hall's wallet in the same bedroom, and placed the wallet on top of a backpack which was lying on the bed in order to take a photograph of it. Although Hall may imply that Strause did so in order to draw a connection between Hall and the contents of the backpack, there is simply no evidence of that fact. In addition, during the hearing, there was no testimony that the money seized was unaccounted for in the inventory. Even if it was not listed on the inventory, Hall has not shown prejudice in this regard. This Court finds that the officers' actions during the execution of the warrant were not unreasonable.

### C. Conclusion and Recommendation of the Court

Having considered the factors and evidence presented, and based upon the findings and conclusions of law stated herein, the undersigned magistrate judge recommends that the District Court deny Defendant Stephen Shane Hall's *Motion for Suppression of Evidence* [Clerk's doc. #74].

### D. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within fourteen (14)

days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court, *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

At the suppression hearing, the Court directed that the statutory fourteen (14) day objections day be shortened to ten (10) days in light of the impending trial setting in Mr. Hall's case. The parties had no objection to this expedited timeline for filing objections. In order to allow the District Court sufficient time to review any objections to this Court's findings before the case is set for trial, the undersigned accordingly **directs that the parties file objections to this report within ten (10) days** of receipt via electronic filing.

**SIGNED this the 1st day of May, 2014.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE